## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DUC MINH TRAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | |
| THE COUNTY OF DOUGLAS, DOUGLAS | ) | No. 21-2310-KHV |
| COUNTY BOARD OF COMMISSIONERS, | ) | |
| LAWRENCE POLICE DEPARTMENT, | ) | |
| THE CITY OF LAWRENCE, LAWRENCE | ) | |
| BOARD OF CITY COMMISIONERS, BRAD | ) | |
| WILLIAMS, GREGORY C. BURNS, AMY A. | ) | |
| McGOWAN and LeTIFFANY OBOZELE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

Duc Minh Tran has filed suit against the Police Department of Lawrence, Kansas, the City of Lawrence, the Lawrence Board of City Commissioners, Brad Williams, Gregory C. Burns, Amy A. McGowan and LeTiffany Obozele. Plaintiff's claims arise from an incident in 2019, when Williams, a police officer, detained and arrested plaintiff for skateboarding in a city street. Plaintiff asserts (1) a claim for excessive force against Williams under 42 U.S.C. § 1983 (Count 1), (2) a claim against Chief of Police Burns, the City and the Lawrence Police Department for failure to train and supervise under 42 U.S.C. § 1983 (Count 2), (3) claims against Williams, the City and the Lawrence Police Department for negligence (Count 3) and battery (Count 4), and (4) a claim against McGowan, Chief Assistant District Attorney, Obozele, Assistant District Attorney LeTiffany, and Douglas County for malicious prosecution (Count 5). The record does not reflect that plaintiff has accomplished service of the summons or complaint on Williams, Burns or

McGowan.[1]  This matter is before the Court on <u>Defendants Lawrence Police Department, The City Of Lawrence, And The Lawrence Board Of City Commissioners' [] Motion To Dismiss Plaintiff's Amended Complaint For Failure To State A Claim</u> (Doc. #10) filed August 12, 2021 and <u>Defendant Obozele's Motion To Dismiss</u> (Doc. #12) filed August 16, 2021.  For reasons stated below, the Court sustains the motions to dismiss as to the Lawrence Police Department, the Lawrence Board of City Commissioners and Obozele but overrules the motion to dismiss as to the City of Lawrence.

## Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face.  <u>Id.</u> at 679–80; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  <u>Iqbal</u>, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.  <u>See id.</u> at 678.  Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged.  <u>Id.</u>  However, plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability.

---

[1]    **On or before 5:00 p.m. on December 8, 2021, plaintiff shall show good cause in writing why service of the summons and complaint was not made upon Brad Williams, Gregory C. Burns and Amy A. McGowan within 90 days from the filing of the complaint, and why this action should not be dismissed without prejudice as to those defendants for lack of prosecution under Rule 4(m) of the Federal Rules of Civil Procedure.**

Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

## Factual Background

Plaintiff's amended complaint alleges as follows:

Plaintiff is a resident of Lawrence, Kansas.  Brad Williams is a former police officer for the Lawrence Police Department.

In the summer of 2019, Williams stopped Tran, who was skateboarding with friends in the roadway of the 700 block of New Hampshire Street in Lawrence, Kansas.  Amended Complaint (Doc. #3), ¶ 14.  Tran told Williams that it was legal to skateboard in the roadway because he could not do so on the sidewalks in that area.  Williams insisted that such conduct was illegal under Section 136 of the standard traffic ordinance for Kansas cities.  Id., ¶¶ 19–20; see K.S.A. § 8-2002(a)(21) ("No person upon roller skates, or riding in or by means of any coaster, toy vehicle, or similar device, shall go upon any roadway except while crossing a street at a cross walk and except upon streets set aside as play streets.").  Tran understood that Section 136 did not apply to skateboards because it does not include the specific term "skateboard," which the legislature used in other sections of the standard traffic ordinance.  Id., ¶ 20.

Tran asked Williams "Are you going to arrest me?"  Williams responded that "you are not

free to leave," to which Tran, again, responded "are you going to arrest me?"[2] Id., ¶ 15. Williams then tackled Tran. Id., ¶ 17. Williams grabbed one of Tran's arms and twisted it and lifted it, which fractured the proximal of Tran's left ulna and dislocated his shoulder. Id. Tran attempted to comply with Williams's order during the arrest, but could not do so because Williams put the full weight of his body on him. Id. Tran told Williams numerous times that "you are breaking my arm" and "you're hurting me." Id.

After Williams handcuffed Tran, he lifted him by the handcuffs, which further aggravated Tran's arm injury. Id., ¶ 18. Williams also drove Tran's face into the ground, resulting in Tran chipping one of his teeth. In detaining Tran, Williams used excessive and unreasonable force in violation of department policy and contrary to training and national standards. Id., ¶ 31.

Tran again asked Williams if he was going to arrest him. Williams responded "Hey, you're not charged and I need you to listen." Id., ¶ 21. Williams then took Tran to jail. Law enforcement officers released Tran before they filed any charges.

After law enforcement officers released Tran, his attorney sent a letter to then Chief of Police of the Lawrence Police Department, Gregory Burns, asking him to preserve all evidence related to Tran's arrest because of a potential civil lawsuit. After Williams learned of the letter, he prepared an affidavit "filled with lies" and presented it to the District Attorney's Office. Id., ¶ 22. Chief Assistant District Attorney Amy McGowan then filed a complaint which charged Tran with interference with law enforcement (a class A nonperson misdemeanor); assault of a law enforcement officer (a class A person misdemeanor); and failure to obey a lawful order of police officer (an unclassified misdemeanor). Williams and McGowan knew that the charges lacked

---

[2]    Tran never turned his back on Williams, walked away or threatened Williams. In an affidavit, Williams later stated that Tran had turned his back and walked away.

probable cause.  McGowan filed the charges solely to protect Williams from an excessive force claim and his needless infliction of physical injuries on Tran.

McGowan assigned Assistant District Attorney LeTiffany Obozele as prosecutor on plaintiff's case.  Despite plaintiff's request, Obozele failed to disclose exculpatory evidence that Williams had previously used excessive force with detainees and falsified information in police reports.  Plaintiff alleges that Obozele denied him access to the exculpatory evidence to deprive him of due process and to protect Williams.  On November 10, 2020, the State dismissed the charges against plaintiff with prejudice.

Burns failed to properly educate, train and supervise Williams on the use of force, de-escalation of tense encounters, proper handling of non-violent offenders and rendering aid to individuals.  Burns allowed Williams and others to violate policies and rules, including rules that prohibit "excessive use of force in retaliation towards obstinate minor traffic offenders."  Id., ¶ 33. As an example, on February 12, 2019, Burns learned of—but did not investigate—a complaint that Williams had falsified a report despite video and bodycam recordings that directly contradicted it. Id., ¶ 27.

On July 16, 2021, plaintiff filed suit in this Court.  He asserts (1) a claim against Williams for excessive force in violation of 42 U.S.C. § 1983 (Count 1),[3] (2) a claim against Burns, the City and the Lawrence Police Department for failure to train and supervise in violation of 42 U.S.C. § 1983 (Count 2), (3) claims against Williams, the City and the Lawrence Police Department for

---

[3]     Count 1 refers generally to all "Defendants."  Id., ¶¶ 38–45.  Even so, plaintiff has not alleged facts which could establish a plausible claim for excessive force against any defendant other than Williams.  As to Burns, the City and the Lawrence Police Department, plaintiff has asserted a separate Section 1983 claim (Count 2 which incorporates all of the allegations of Count 1) based on their failure to train and supervise Williams.  Accordingly, the Court construes Count 1 as asserting a Section 1983 claim only against Williams.

negligence (Count 3) and battery (Count 4), and (4) a claim against McGowan, Obozele and Douglas County for malicious prosecution (Count 5).

**Analysis**

The Lawrence Police Department, the City of Lawrence, the Lawrence Board of County Commissioners and Obozele seek to dismiss plaintiff's claims against them for failure to state a claim on which relief can be granted.  The Court addresses the claims against each defendant in turn.

## I.     Lawrence Police Department

Defendants argue that the Lawrence Police Department is not a legal entity which is subject to suit.  Plaintiff concedes this point.  <u>Response To Defendants Lawrence Police Department, The City Of Lawrence, And The Lawrence Board Of City Commissioners' Motion To Dismiss</u> (Doc. #16) filed August 18, 2021 at 4.

Generally, governmental sub-units are not separate entities that may be sued under Section 1983.  <u>See</u> <u>Martinez v. Winner</u>, 771 F.2d 424, 444 (10th Cir.), <u>opinion modified on denial of reh'g</u>, 778 F.2d 553 (10th Cir. 1985), <u>judgment vacated sub nom.</u> <u>Tyus v. Martinez</u>, 475 U.S. 1138 (1986) ("City of Denver Police Department" not separate entity that can be sued).  Likewise, under Kansas law, absent a specific statute, subordinate governmental agencies do not have the capacity to sue or be sued.  <u>Mason v. Twenty-Sixth Judicial Dist.</u>, 670 F. Supp. 1528, 1555 (D. Kan. 1987); <u>Hopkins v. State</u>, 237 Kan. 601, 606, 702 P.2d 311, 316 (1985).  The Court therefore dismisses plaintiff's claims against the Lawrence Police Department.

## II.    Lawrence Board Of City Commissioners

Defendants asks the Court to dismiss the Lawrence Board of City Commissioners because it is an identical legal entity to the City, which is a defendant.  Plaintiff concedes this point.

-6-

<u>Response To Defendants Lawrence Police Department, The City Of Lawrence, And The Lawrence Board Of City Commissioners' Motion To Dismiss</u> (Doc. #16) at 8.

Plaintiff sued the Board of City Commissioners solely in its official capacity as a policymaking entity for the City. <u>Amended Complaint</u> (Doc. #3), ¶ 9. Official capacity suits are simply "another way of pleading an action against an entity of which an officer is an agent." <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691 n.55 (1978). Because plaintiff has sued the City directly, his claims against the Board of City Commissioners are redundant. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n.14 (1985) (no need to bring official-capacity actions against local government officials because local government units can be sued directly). Accordingly, the Court dismisses such claims. <u>See</u> <u>Sims v. Unified Gov't of Wyandotte Cty.</u>, 120 F. Supp. 2d 938, 945 (D. Kan. 2000) (where plaintiff sues both municipality and municipal officers in official capacities, suits against officers are redundant and should be dismissed).

**III.    City Of Lawrence**

Plaintiff sues the City of Lawrence for failure to train or supervise Williams in violation of Section 1983, negligence and battery. The City argues that (1) the applicable statute of limitations bars plaintiff's Section 1983 and negligence claims, and (2) plaintiff has not stated a claim against the City under Section 1983 based on failure to train or failure to supervise.

A.    <u>Statute Of Limitations</u>

The City argues that plaintiff filed his Section 1983 and negligence claims outside the two-year statute of limitations. Plaintiff argues that his claims are timely because in response to the COVID-19 pandemic, the Kansas Supreme Court tolled all statutory deadlines from May 1, 2020 to April 15, 2021. <u>Response To Defendants Lawrence Police Department, The City Of Lawrence,</u>

And The Lawrence Board Of City Commissioners' Motion To Dismiss (Doc. #16) at 3–4.[4]

No federal statute of limitations exists for Section 1983 actions, so federal courts look to analogous state laws and the applicable state statutes of limitation.  See Baker v. Bd. of Regents of Kan., 991 F.2d 628, 630 (10th Cir. 1993); Brown v. Hartshorne Pub. Sch. Dist. No. 1, 926 F.2d 959 (10th Cir. 1991) (applying Oklahoma savings statute and Oklahoma law which uses transactional approach).  Federal law, however, controls when a federal cause of action accrues. See Wallace v. Kato, 549 U.S. 384, 388 (2007).

For Section 1983 claims arising in Kansas, the Court applies a two-year statute of limitations.  See Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch., 465 F.3d 1184, 1188 (10th Cir. 2006) (forum state's statute of limitations for personal injury actions governs civil rights claims under Sections 1981 and 1983, which is two years in Kansas under K.S.A. § 60–513(a)). A two-year statute of limitations also applies to plaintiff's negligence claim against the City.  See K.S.A. § 60–513(a)(4).

The statute of limitations is an affirmative defense, but the Court may resolve the issue on a Rule 12(b)(6) motion to dismiss where application of the limitations period is apparent on the face of the complaint.  Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 (10th Cir. 1980); see GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (court must exclude outside material unless motion converted to one for summary judgment under Rule 56).  In the amended complaint, plaintiff alleges that Williams detained him sometime on a

---

[4]     Plaintiff also argues that his claims against the City are timely because he filed his complaint within the statute of limitations for a malicious prosecution claim.  See id. at 2–3.  As noted above, plaintiff asserts a malicious prosecution claim against the state district attorneys, not the City.  "Where a suit invokes several causes of action, each is subject to a distinct statute of limitations."  Tiberi v. Cigna Corp., 89 F.3d 1423, 1428 (10th Cir. 1996).  Accordingly, the Court determines separately the timeliness of plaintiff's claims against the City and the timeliness of his claim against the district attorneys.

"summer night in 2019." Amended Complaint (Doc. #3), ¶ 14.  To determine the date that Williams detained plaintiff, the Court refers to the Notice of Claim that plaintiff filed with the City and Douglas County.  See Exhibit 1 to Defendants Lawrence Police Department, The City Of Lawrence, And The Lawrence Board Of City Commissioners' Memorandum In Support Of Defendants' Motion To Dismiss Plaintiff's Amended Complaint (Doc. #11) filed August 12, 2021. The Court can consider this document without converting defendant's motion to dismiss to one for summary judgment because plaintiff's complaint refers to the Notice of Claim, id. ¶ 13, and he does not dispute the authenticity of the document.  See Prager v. LaFaver, 180 F.3d 1185, 1189 (10th Cir. 1999) (court has discretion whether to consider materials defendant attaches to Rule 12(b)(6) motion if plaintiff refers to them and they are central to plaintiff's claim).   In the Notice of Claim, plaintiff alleges that Williams used excessive force when he detained him on June 29, 2019.  Plaintiff's Section 1983 and negligence claims (Counts 1, 2 and 3) accrued on June 29, 2019, when he knew of both Williams's conduct and the resulting injury.  See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir. 2006) (Section 1983 action accrues when facts that would support cause of action are or should be apparent); Moon v. City of Lawrence, 267 Kan. 720, 727, 982 P.2d 388, 394 (1999) (under K.S.A. § 60-513(b), statute of limitations starts to run when negligent act causes injury if both act and resulting injury are reasonably ascertainable to injured person).

Plaintiff filed his complaint on July 16, 2021, which is more than two years from when the statute of limitations accrued on his claims against the City.  Accordingly, the statute of limitations bars plaintiff's claims unless he can establish a basis for tolling the statute.

In a series of administrative orders in response to the COVID-19 pandemic, the Kansas Supreme Court suspended "all statutes of limitations" from March 19, 2020 through April 15,

2021.   Administrative   Order 2020-PR-32   at   6   (Kan.   April 3,   2020),   available   at https://www.kscourts.org/Rules-Orders/Orders; see Administrative Order 2021-PR-20 at 5 (Kan. Mar. 30, 2021) (lifting suspension of time limitations on April 15, 2021).  The City argues that the Kansas Supreme Court orders do not apply to suits filed in federal court.  As explained above, however, because no federal statute of limitations exists for Section 1983 actions, federal courts apply analogous state statutes of limitation.  See Hardin v. Straub, 490 U.S. 536, 538 (1989).  The Court also borrows state tolling rules unless doing so would defeat Section 1983's primary goals of "compensation and deterrence or its subsidiary goals of uniformity and federalism."  Id. at 539.

The tolling rules which Kansas instituted in response to the COVID-19 pandemic do not undermine Section 1983's goals.  See id. at 543 (state decision to toll statute of limitations during incarceration does not frustrate goals of compensation and deterrence).  Indeed, a rule which tolls the deadline for citizens to file suit during a pandemic appears to promote Section 1983's primary goals to compensate victims and deter future violations of Constitutional rights.  See Fullen v. City of Salina, Kansas, No. 21-4010-JAR-TJJ, 2021 WL 4476780, at *8 (D. Kan. Sept. 30, 2021) (Kansas tolling rules instituted in response to COVID-19 promote goals of compensation and deterrence); Bonilla v. City of New York, No. 20CV1704RJDLB, 2020 WL 6637214, at *2 (E.D.N.Y. Nov. 12, 2020) (New York Executive Order 202.8 advances Section 1983 goals by permitting ample time to pursue claims during global pandemic).  Accordingly, the statute of limitations on plaintiff's claims was tolled from March 19, 2020 through April 15, 2021.[5]  See

---

[5]     The City also argues that the administrative orders do not apply to plaintiff's claims because the statute of limitations on such claims had already accrued when the Kansas Supreme Court issued the orders and the statute of limitations "did not expire during the pendency of the Order."  Defendants['] Reply In Support Of Their Motion To Dismiss Plaintiff's Amended Complaint For Failure To State Claim (Doc. #20) filed August 27, 2021 at 5.  Contrary to the City's suggestion, the tolling provisions of the administrative orders were not so limited.  Instead, (continued . . .)

Fullen, 2021 WL 4476780, at *8; Bonilla, 2020 WL 6637214, at *2; see also Mackey v. Rising, No. 20-13408, 2021 WL 4034226, at *2 (E.D. Mich. Sept. 3, 2021) (Michigan executive orders issued during pandemic toll statute of limitations in Section 1983 action); Lewis v. Westchester Cty., No. 20 CV 9017 (VB), 2021 WL 3932626, at *2 (S.D.N.Y. Sept. 2, 2021) (New York Executive Order 202.8 tolled Section 1983 claims for unreasonable and excessive force, cruel and unusual punishment, and false arrest).

As explained above, plaintiff's Section 1983 and negligence claims against the City accrued on June 29, 2019. Because the Kansas Supreme Court administrative orders tolled the statute of limitations from March 19, 2020 through April 15, 2021, plaintiff's complaint—filed on July 16, 2021—was well within the two-year statute of limitations. The Court therefore overrules the City's motion to dismiss on this ground.[6]

B.     Sufficiency Of Allegations That City Failed To Train Or Supervise Williams

Plaintiff alleges that the City is liable under Section 1983 because it failed to adequately train, supervise or investigate Williams. Under Section 1983, a municipality may not be held liable simply because it employs a person who violated plaintiff's federally protected rights. Jenkins v. Wood, 81 F.3d 988, 993 (10th Cir. 1996). For liability to attach to a municipality, the "under color

---

[5](. . . continued)
the Kansas Supreme Court suspended "[a]ll statutes of limitations" from March 19, 2020 to April 15, 2021, which effectively tolled the running of the statute of limitations for all claims. Administrative Orders 2020-PR-47 (May 1, 2020) at 2; Administrative Order 2020-PR-32 (April 3, 2020) at 6; see Fullen, 2021 WL 4476780, at *8.

[6]     In the amended complaint, plaintiff has not alleged that the statute of limitations is tolled. Even so, no further factual allegations are necessary to determine whether the Kansas Supreme Court administrative orders toll the statutes of limitations on plaintiff's claims. Accordingly, the Court declines to require plaintiff to amend his complaint to include allegations related to tolling. Cf. Jackson v. City of Kansas City, Kan., No. 99–2344–KHV, 2000 WL 574986, at *2 (D. Kan. Apr. 6, 2000) (requiring plaintiff to amend complaint because on Rule 12(b)(6) motion, court cannot consider allegations or evidence of tolling outside pleadings).

of state law" element requires that the constitutional deprivation occurred pursuant to an official policy or custom.  See Monell, 436 U.S. at 694; see also Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 482–83 (1986) (municipal entity may be held liable for act it has officially sanctioned, or for actions of official with final policymaking authority).  Thus, plaintiff must identify a "policy" or "custom" that caused his injury.  See Bd. of Cty. Comm'rs of Bryan Cty, Okla. v. Brown, 520 U.S. 397, 403–04 (1997).  Identifying a policy ensures that a municipality is liable only for deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.  Id.

A municipal policy or custom may exist in one of several forms, including (1) a formal regulation or policy statement; (2) an informal custom created through a widespread practice that is so permanent that it constitutes a custom or usage with the force of law; (3) decisions by employees who have final policymaking authority; (4) ratification by such policymakers of decisions of subordinates to whom policymakers delegated authority, subject to review and approval; or (5) failure to adequately train or supervise employees, if the failure "results from deliberate indifference to the injuries that may be caused."  Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010).  Citing a policy or custom, plaintiff must demonstrate that through its deliberate conduct, the municipality or policymaker was the "moving force" behind the injury alleged.  See Bd. of Cty. Comm'rs of Bryan Cty, 520 U.S. at 404 (plaintiff must show action taken with requisite degree of culpability and direct causal link between municipal action and deprivation of federal rights).

Because plaintiff asserts that the alleged custom or policy comprised a failure to act, he must allege that the inaction resulted from "deliberate indifference" to his rights.  Bd. of Cty. Comm'rs of Bryan Cty, 520 U.S. at 407.  Thus, he must allege that (1) the City had a policy or

custom; (2) the City policy or custom constituted deliberate indifference to his constitutional rights; and (3) the City policy or custom caused the deprivation of his constitutional rights.  Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993).  Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Bd. of Cty. Comm'rs of Bryan Cty, 520 U.S. at 410.

As to training specifically, deliberate indifference is established when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  City of Canton v. Harris, 489 U.S. 378, 388–89 (1989).  A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.  Connick v. Thompson, 563 U.S. 51, 61 (2011).  A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of a failure to train claim against a municipality.  Id. at 62 (quoting Bd. of Cty. Comm'rs of Bryan Cty, 520 U.S. at 409).  Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.  Id.

Here, plaintiff asserts that the City is liable under Section 1983 because it failed to adequately train, supervise or investigate Williams.  The City argues that except in conclusory fashion, the complaint does not allege facts which plausibly establish that (1) a City policy or custom caused Williams to use excessive force against plaintiff or (2) any such policy reflected deliberate indifference to plaintiff's rights.

Plaintiff's allegations related to training, supervision and investigation are interrelated and all go to the City "policy or custom" on officer use of force.  Plaintiff alleges that Williams "had

no need at all to use force or to handcuff" him and that Williams used force in violation of use of force policies, national standards, and department guidelines and standards.  Amended Complaint (Doc. #3), ¶¶ 29–31.  Plaintiff alleges that Burns allowed Williams and others to violate policies and rules, including rules that prohibit "excessive use of force in retaliation towards obstinate minor traffic offenders."  Id., ¶ 33.  As an example, plaintiff alleges that on February 12, 2019, Burns learned of—but did not investigate—a complaint that Williams had falsified a report despite a video recording and bodycam recordings that directly contradicted it.  Id., ¶ 27.  Plaintiff essentially alleges that the City's informal policies and practices (and lack of enforcement of official policies) set a standard which permitted officers to use excessive force.  See Cordova v. Aragon, 569 F.3d 1183, 1194 (10th Cir. 2009) (failure to investigate complaint or reprimand officer might cause future violation by sending message to officers that such behavior is tolerated).  Accordingly, plaintiff has stated a plausible claim that (1) a City policy or custom of allowing officers to use excessive force constituted deliberate indifference to his constitutional rights; and (2) the City policy or custom caused the deprivation of his constitutional rights.  The Court overrules the City's motion to dismiss plaintiff's Section 1983 claim.

## IV.    Obozele

Plaintiff alleges that Obozele violated his right to due process under the Fifth and Fourteenth Amendments when she failed to disclose exculpatory evidence that Williams had previously used excessive force with detainees and falsified information in police reports.  See Amended Complaint (Doc. #3), ¶¶ 7, 24, 27.  Plaintiff also asserts a claim for malicious prosecution against her.  Obozele seeks to dismiss plaintiff's claims based on absolute prosecutorial immunity.  Plaintiff contends that prosecutorial immunity does not apply because Obozele was not acting in her normal advocacy function when she violated his rights.

A prosecutor is entitled to absolute immunity for the initiation of a prosecution and activities "intimately associated" with the judicial phase of the criminal process.  Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976); see Mink v. Suthers, 482 F.3d 1244, 1259 (10th Cir. 2007); see also Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (acts by prosecutor in preparing for initiation of judicial proceedings or for trial, and which occur in course of her role as advocate for State, entitled to protections of absolute immunity).  Absolute immunity is not available, however, where a prosecutor acts in the role of an administrator or investigative officer rather than as an advocate.  Imbler, 424 U.S. at 430–31.

Here, plaintiff alleges that despite his counsel's requests for information on Williams, Obozele denied him access to information that she was required to disclose under Giglio v. United States, 405 U.S. 150 (1972).  Amended Complaint (Doc. #3), ¶ 24.  Under Brady v. Maryland, 373 U.S. 83 (1963), a prosecutor violates a defendant's right to due process if upon request, she suppresses evidence favorable to an accused that is "material either to guilt or to punishment." 373 U.S. at 87.  In Giglio, the Supreme Court further required that upon request, a prosecutor must disclose evidence about the credibility of a prosecution witness when the reliability of that witness may determine defendant's guilt or innocence.  See United States v. Bagley, 473 U.S. 667, 676 (1985); Giglio, 405 U.S. at 154–55.

A prosecutor's withholding of evidence is an action "intimately associated" with the judicial process.  Powell v. Spear, 6 F. App'x 739, 741 (10th Cir. 2001).  See Imbler, 424 U.S. at 431 n.34 (absolute immunity extends to both "willful use of perjured testimony and willful suppression of exculpatory information"); Fields v. Wharrie, 672 F.3d 505, 513 (7th Cir. 2012) (Brady and Giglio duties "functionally prosecutorial" because intimately related to judicial phase of criminal process).  Plaintiff argues that this case does not involve "withholding" of Brady/Giglio

evidence, but Obozele's failure "in performing a cursory investigation of the existence of a <u>Giglio</u> file." <u>Surreply In Opposition Of Defendant Obozele's Motion To Dismiss</u> (Doc. #19) filed August 25, 2021 at 4.[7]  Plaintiff cites no authority for granting immunity to a prosecutor's final determination of what material must be disclosed under <u>Giglio</u> but not extending such immunity to the prosecutor's investigation whether such material exists.  The prosecutor's investigation for <u>Giglio</u> evidence and her ultimate communication of that decision to opposing counsel both "necessarily require legal knowledge and the exercise of related discretion." <u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 344 (2009).  Consequently, they both are intimately related to the judicial phase of the criminal process.  <u>See</u> <u>Savage v. Maryland</u>, 896 F.3d 260, 272 (4th Cir. 2018) (because assessments of evidence and witness credibility "require legal knowledge and the exercise of related discretion" that is "directly connected with the conduct of a trial," prosecutors enjoy absolute immunity from claims for non-disclosure of witness credibility issues) (quoting <u>Van de Kamp</u>, 555 U.S. at 343–44); <u>see also</u> <u>Robinson v. Volkswagenwerk AG</u>, 940 F.2d 1369, 1373 n.4 (10th Cir. 1991) (whether claim involves withholding evidence, failing to correct misconception or instructing witness to testify evasively, absolute immunity from civil damages is rule for prosecutors).  Plaintiff's allegations about Obozele's conduct fall well within the range of official advocacy-related functions.  Obozele therefore is entitled to absolute immunity.  The Court dismisses plaintiff's claims against Obozole for failure to state a claim on which relief can be granted.

  **IT IS THERFORE ORDERED** that <u>Defendants Lawrence Police Department, The City</u>

---

[7]  Obozele objects to plaintiff's surreply because plaintiff did not raise the arguments in his initial response.  Even after the Court has considered the arguments in plaintiff's surreply, it finds that plaintiff's claims should be dismissed.  Accordingly, the Court overrules Obozele's objection to plaintiff's surreply as moot.

Of Lawrence, And The Lawrence Board Of City Commissioners' [] Motion To Dismiss Plaintiff's Amended Complaint For Failure To State A Claim (Doc. #10) filed August 12, 2021 is **SUSTAINED in part**. **The Court sustains the motion as to the Lawrence Police Department and the Lawrence Board of City Commissioners, but overrules the motion as to the City of Lawrence.**

 **IT IS FURTHERED ORDERED** that Defendant Obozele's Motion To Dismiss (Doc. #12) filed August 16, 2021 is **SUSTAINED**.

 **IT IS FURTHERED ORDERED that the stay of discovery which Magistrate Judge Kenneth G. Gale ordered on August 31, 2021 (Doc. #22) is hereby lifted.**

 **IT IS FURTHER ORDERED that on or before 5:00 p.m. on December 8, 2021, plaintiff shall show good cause in writing why service of the summons and complaint was not made upon Brad Williams, Gregory C. Burns and Amy A. McGowan within 90 days from the filing of the complaint, and why this action should not be dismissed without prejudice as to Williams, Burns and McGowan for lack of prosecution under Rule 4(m) of the Federal Rules of Civil Procedure.**

 Dated this 24th day of November, 2021 at Kansas City, Kansas.

      s/ Kathryn H. Vratil
      KATHRYN H. VRATIL
      United States District Judge