IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| DUC MINH TRAN, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 21-2310-KHV |
| | ) | |
| THE CITY OF LAWRENCE, KANSAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Duc Minh Tran brings suit against the City of Lawrence, Kansas; Gregory Burns, former Police Chief for the City of Lawrence; and Bradley Williams, a former police officer for the City of Lawrence.  Williams arrested plaintiff on June 29, 2019, and plaintiff raises claims for excessive force, malicious prosecution, battery and failure to train.  This matter is before the Court on Defendants City of Lawrence And Gregory C. Burns' Motion For Summary Judgment (Doc. #103) and Defendant Brad Williams' Motion For Summary Judgment (Doc. #105) both filed November 7, 2022.

Plaintiff claims that (1) Williams violated his Fourth Amendment rights by using excessive force and maliciously prosecuting him; (2) Williams engaged in common law battery and common law malicious prosecution against him, and the City of Lawrence is vicariously liable for those offenses; and (3) Burns and the City of Lawrence violated Section 1983 by failing to properly train and supervise Williams.

Defendants argue that (1) qualified immunity bars plaintiff's two Fourth Amendment claims against Williams; (2) the Kansas Tort Claims Act, K.S.A. § 75–6101, et seq., bars plaintiff's tort

claims against Williams and the City of Lawrence; and (3) plaintiff cannot establish the elements of a failure to train claim against Burns and the City of Lawrence.

For reasons stated below, the Court overrules Williams' motion for summary judgment and sustains the City of Lawrence's and Burns' motion for summary judgment in part.

## <u>Legal Standard</u>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Hill v. Allstate Ins. Co.</u>, 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  <u>Liberty Lobby</u>, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  <u>Id.</u> at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Nahno-Lopez v. Houser</u>, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets the initial burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which he carries the burden of proof.  <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990); <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986).  To carry his burden, the nonmoving party may not rest on his pleadings but must instead set forth specific facts supported by competent evidence.  <u>Nahno-Lopez</u>, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party.  <u>Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.</u>, 938 F.2d 1105, 1110 (10th Cir. 1991).  It may grant summary

judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250–51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251–52.

### Facts

The following facts are uncontroverted, deemed admitted or construed in the light most favorable to plaintiff.

### I.      Tran's Arrest And Prosecution

On June 29, 2019, plaintiff was skateboarding in the street with an acquaintance, Aaron Chick, on New Hampshire Street in Lawrence, Kansas.  Williams, whom the City of Lawrence employed as a police officer from 2017 to 2021, stopped plaintiff and informed him that he was violating a traffic ordinance by skateboarding in the street.  Plaintiff told Williams that he had every right to skate on the street as long as he was not skating on the sidewalk.  Plaintiff "thought that was the law." Selected Sections of Duc Tran's Deposition (Doc. #118-2) at 3.

Williams reported that plaintiff "yelled" this at him, while plaintiff testified that Williams immediately "got aggressive" with him through his tone of voice and way of speaking.  Id. at 4; Williams Probable Cause Affidavit (Doc. #106-6) at 1.  Williams reported that plaintiff refused to provide his identification and began to walk away, shouting "Are you gonna arrest me?" Williams Probable Cause Affidavit (Doc. #106-6) at 1.  Williams told plaintiff to come back and that he was not free to leave.

The parties dispute what happened next.  Williams reported that plaintiff approached him quickly in an aggressive manner with his skateboard in his hands, and Williams believed that plaintiff was going to hit Williams with the skateboard.  In a probable cause affidavit that Williams completed on June 30, 2019, Williams stated that plaintiff held the skateboard "above his head with his arm back, as if he was going to hit me with it."  Id.  Plaintiff, however, testified that he never approached Williams aggressively and never held his skateboard in his hand above his head as if he were going to strike Williams with it.  Selected Sections Of Duc Tran's Deposition (Doc. #118-2) at 17.  Chick, who witnessed the interaction between plaintiff and Williams, testified that plaintiff held the skateboard pointed down and never raised it.  Selected Sections Of Aaron Chick Deposition (Doc. #118-3) at 9.

The parties agree that plaintiff dropped his skateboard when Williams told him to and that Williams then took plaintiff's left arm and told him to put his hands behind his back.  The parties dispute whether plaintiff resisted or refused to put his hands behind his back but agree that Williams forced plaintiff to the ground and got on top of him.  In his probable cause affidavit, Williams stated that plaintiff continued to resist; plaintiff testified that he never resisted and that he could not obey Williams' commands because his right arm was caught underneath him and Williams' full weight was pinning him down.

Lawrence police officer Ian McCann responded to a request for emergency backup from Williams.  McCann testified that when he arrived, plaintiff's hands were underneath his body. McCann began to assist Williams by securing plaintiff's legs.  Williams tried to pull plaintiff's arm behind him and McCann attempted to "cue" Williams that this was "not the way we are trained to move the arms." Selected Sections Of Ian McCann Deposition (Doc. #118-4) at 6. McCann testified that Williams "stopped that movement and then brought [the arm] back the way he was supposed

to" into proper handcuffing position.  Id.  Plaintiff, Williams, Chick and McCann all testified that while Williams had plaintiff pinned on the ground, plaintiff repeatedly stated that Williams was breaking his arm.  At some point during this confrontation, plaintiff suffered a fractured ulna (a bone in the forearm).

The officers took plaintiff into custody and booked him into the Douglas County Jail on two felony charges: (1) aggravated assault of a law enforcement officer with a deadly weapon and (2) obstruction of a law enforcement officer.  On June 30, 2019, Williams wrote a probable cause affidavit detailing Tran's arrest and stating that Tran raised his skateboard above his head as though he was going to strike Williams and then resisted arrest.  Williams made the same allegations in a police report that he completed on or before July 4, 2019.  LPD Incident Report (Doc. #106-4) at 2.

Douglas County dropped the felony charges against plaintiff and released him from custody.[1] Amy McGowen, the Douglas County District Attorney, reviewed plaintiff's case after receiving the reports and video of the encounter to determine whether to bring charges against plaintiff.  On July 12, 2019, McGowen charged plaintiff with three misdemeanors: (1) interference with law enforcement; (2) assault of a law enforcement officer; and (3) failure to obey a lawful order of a police officer.  McGowan did not charge plaintiff until after the Douglas County Jail released him.

On March 12, 2020, in the Douglas County District Court, plaintiff brought a "Motion to Quash Arrest and Dismiss Case for Lack of Probable Cause."  Tran's Memo In Support Of Motion To Quash Arrest And Suppress Evidence (Doc. #118-12).  In this motion, plaintiff did not dispute any of the statements which Williams had provided in his probable cause affidavit, including Williams' statement that plaintiff had raised his skateboard as though he was going to hit Williams

---

[1] The record does not state when Douglas County released plaintiff from custody but based on photographs that plaintiff posted to Facebook on July 1, 2019, the Court assumes that he was released on or before that date.  Facebook Posts (Doc. #104-11) at 2–5.

with it.  Id. at 3–4.  On October 20, 2020, based on the then-undisputed facts in Williams' affidavit, the Douglas County District Court ruled that Williams had probable cause to arrest plaintiff for assault on a law enforcement officer and denied plaintiff's motion to dismiss the misdemeanor case. Order Denying Defendant's Motion To Quash Arrest And Dismiss Case For Lack Of Probable Cause (Doc. #104-7) at 1–5.

On November 20, 2020, the State of Kansas made a written request that the Douglas County District Court dismiss the case against plaintiff.  The court dismissed the case with prejudice on the same day.  Pretrial Order (Doc. #100) filed October 19, 2022 at 3.  The record provides no direct explanation why the State of Kansas asked the court to dismiss the case, but that a month earlier, on October 20, 2020, the Douglas County District Court issued a Notice of Reconsideration in plaintiff's case, described below.

**II.     Williams' False Statements In O'Connor Case And Dismissal Of Charges Against Tran**

On February 12, 2019, plaintiff's counsel Kurt Kerns submitted a letter to Burns alleging that Williams had falsified evidence in a different criminal case involving Jameson O'Connor.  On February 4, 2018, Williams and a Lawrence police officer named Brian Wonderly had conducted a check at a bar called the Jayhawk Cafe.  In his report, Williams wrote that O'Connor "chest bumped" Wonderly.   In later testimony, he reiterated that O'Connor "physically pushed" Wonderly while Wonderly was escorting a suspected underage drinker out of the bar.  Officer Report Narrative (Doc. #118-8) at 1; Williams Testimony, City of Lawrence v. Jameson O'Connor (Doc. #118-9) at 7.  Williams arrested O'Connor for interference with duties of a police officer. At O'Connor's trial, however, Williams admitted that Wonderly told him, "I think it was probably me [Wonderly] pushing him [O'Connor] back" rather than O'Connor pushing Wonderly. Williams Testimony, City of Lawrence v. Jameson O'Connor (Doc. #118-9) at 15.  When he wrote his report, Williams omitted Wonderly's statement.  O'Connor was acquitted at trial.  The

6

Lawrence Municipal Court stated that it was "troubling and problematic" that Williams omitted exculpatory information from his report.  Excerpt From Transcript Of Proceedings (Doc. #118-10) at 6.

On March 18, 2019, after receiving Kerns' letter, Burns referred the matter to Sergeant David Ernst at the Office of Professional Accountability.  Ernst reviewed the police report and video footage of O'Connor's arrest and interviewed a city prosecutor who advised the O'Connor trial.  Ernst submitted a report which summarized his findings and concluded that Williams "properly discharged the duties assigned to him and was truthful in his testimony."[2]  OPA Reports (Doc. #104-10) at 7.  From the record, it appears that Burns did not reach an official decision on the matter before May of 2020, when he resigned as police chief.  The subsequent Lawrence police chief, Anthony Brixius, reviewed the matter and Ernst's findings in May of 2020 and exonerated Williams.[3]  Id. at 9.

On August 24, 2020, the Douglas County District Court found that, in violation of Giglio v. United States, 405 U.S. 150 (1972), the state had failed to provide Tran exculpatory information, i.e. Williams had made false statements in the O'Connor case.  The court ruled that the state's failure to provide this information did not prejudice Tran, however, and declined to dismiss the case.  On October 20, 2020, the court issued a Notice of Reconsideration after receiving more information about Kerns' letter and the City of Lawrence's inquiry into Kerns' allegations about Williams.  The notice stated that the court was considering dismissing the misdemeanor charges

---

[2]      The report is not dated and the record does not reveal when Ernst submitted the report.  The report references an interview with the city prosecutor, however, which took place on July 17, 2019.  OPA Reports (Doc. #104-10) at 3.  The Court therefore assumes that Ernst submitted his report on or after July 17, 2019.

[3]      The record also does not reveal the date that Brixius exonerated Williams.

against Tran, or applying some other sanction to the State, due to the State's failure to provide defendant with <u>Giglio</u> material.   <u>Notice Of Reconsideration</u> (Doc. #118-11) at 2.   The court directed the parties to submit written arguments by November 20, 2020. On November 20, 2020, the state made a written request that the court dismiss the case against plaintiff with prejudice, and the court did so.

## III.   Procedural History

Plaintiff commenced this action on July 16, 2021.  Plaintiff claims that (1) Williams violated his Fourth Amendment rights by using excessive force when arresting him; (2) Williams included false statements in his probable cause affidavit and therefore violated his Fourth Amendment rights by maliciously prosecuting him; (3) Williams committed common law battery and common law malicious prosecution, and the City of Lawrence is vicariously liable for those offenses; and (4) Burns and the City of Lawrence violated Section 1983 by failing to properly supervise Williams. Plaintiff seeks damages for medical expenses, pain and suffering and punitive damages.

Defendants argue that (1) qualified immunity bars plaintiff's two Fourth Amendment claims against Williams; (2) the Kansas Tort Claims Act bars plaintiff's tort claims against Williams and the City of Lawrence; and (3) plaintiff cannot establish the elements of a failure to train claim against Burns and the City of Lawrence.

<u>Analysis</u>

## I.   Fourth Amendment Claims Against Williams

Williams argues that qualified immunity applies to plaintiff's Fourth Amendment claims against him for excessive force and malicious prosecution.  Section 1983 allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law.   <u>Cillo v. City of Greenwood Village</u>, 739 F.3d 451, 459 (10th Cir. 2013).

Individual defendants named in a Section 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law.  Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008).

At summary judgment, the Court must grant qualified immunity unless plaintiff can show that a reasonable jury could find facts supporting a violation of a constitutional right which was clearly established at the time of defendant's conduct.  42 U.S.C. § 1983; Est. of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014).   Qualified immunity should protect "all but the plainly incompetent or those who knowingly violate the law" and the burden on plaintiff is "heavy" to overcome defendant's summary judgment motion based on qualified immunity.  Malley v. Briggs, 475 U.S. 335, 341 (1986); Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).

For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains.  Fogarty v. Gallegos, 523 F.3d 1147, 1161 (10th Cir. 2008).  The rule's contours must be so well defined that it is clear and apparent to a reasonable officer that his conduct was unlawful in the situation he confronted.  District of Columbia v. Wesby, 138 S. Ct. 577, 590 (2018).

Plaintiff is not required to show that a prior court held the exact act in question to be unlawful. Weigel v. Broad, 544 F.3d 1143, 1153 (10th Cir. 2008).  The Court "cannot find qualified immunity wherever we have a new fact pattern" because "there will almost never be a previously published opinion involving exactly the same circumstances."  Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007).  The Court therefore uses a sliding scale to determine when law is clearly established: the more obviously egregious the conduct is in light of prevailing constitutional

principles, the less specificity is required from prior case law to clearly establish the violation. Booker, 745 F.3d at 427.

### A.      Excessive Force Claim Against Williams

Plaintiff claims that Williams used excessive force when arresting him.  Williams argues that he is entitled to qualified immunity because plaintiff cannot establish the elements of an excessive force claim and, alternatively, cannot show that Williams violated a "clearly established" right to be free from excessive force at the time of plaintiff's arrest.

A police officer violates an arrestee's clearly established Fourth Amendment right to be free of excessive force during an arrest if the officer's arresting actions were not objectively reasonable in light of the facts and circumstances confronting him.  Graham v. Connor, 490 U.S. 386, 397 (1989).  The Court evaluates reasonableness under a totality of the circumstances approach by balancing the Graham factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.  Id. at 396.  The Court must judge the amount of force used "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Est. of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1259 (10th Cir. 2008).

For purposes of qualified immunity, the Court must first determine whether a reasonable jury could find facts supporting a violation of plaintiff's constitutional right to be free from excessive force.  "Our threshold inquiry in the qualified immunity analysis is whether, taking [plaintiff's] allegations as true," defendant violated his Fourth Amendment rights.  Mecham v. Frazier, 500 F.3d 1200, 1204 (10th Cir. 2007).

Under the first Graham factor—the severity of the crime at issue—Williams initially approached plaintiff for violating a traffic ordinance by skateboarding in the street but ultimately

arrested him for aggravated assault of a law enforcement officer with a deadly weapon and obstruction of a law enforcement officer.  This factor weighs in favor of Williams because aggravated assault of a law enforcement officer is a serious offense for which reasonable force can be justified.[4]  See Morris v. Noe, 672 F.3d 1185, 1195 (10th Cir. 2012) ("[A] forceful takedown . . . may very well be appropriate in arrests or detentions for assault, especially if the officer is trying to prevent an assault.").

The second Graham factor—whether plaintiff posed a threat—weighs in favor of plaintiff. Plaintiff and Chick testified that plaintiff never raised his skateboard in a threatening manner and that plaintiff obeyed Williams' order to drop the skateboard.  Plaintiff therefore raises a genuine issue of material fact whether he raised his skateboard above his head as though he were going to hit Williams with it.[5]  Although he and Williams were both agitated, plaintiff made no verbal or physical threats and, construing the record in the light most favorable to plaintiff, he did not approach Williams in an aggressive way.

The third Graham factor—whether plaintiff resisted arrest or attempted to flee—also weighs in favor of plaintiff.  Construing the record in the light most favorable to plaintiff, he did not resist arrest or attempt to flee before, during or after Williams tackled him.  Based on the Graham factors,

---

[4]      Although the Court construes the facts in the light most favorable to plaintiff, in an excessive force inquiry "we ask whether the force used 'would have been reasonably necessary *if the arrest or the detention were warranted.*'"  Morris v. Noe, 672 F.3d 1185, 1195 (10th Cir. 2012).

[5]      Summary judgment motions may not be granted on any excessive force claims under § 1983 for which any genuine issue of material fact remains.  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002); Booker, 745 F.3d at 423 ("Defendants argue they are entitled to qualified immunity on the Plaintiffs' excessive force claim.  We disagree, largely because we may not resolve critical factual disputes—such as whether Mr. Booker resisted during the entire encounter—in the Defendants' favor.").

a reasonable jury could conclude that Williams violated plaintiff's right to be free from excessive force when Williams tackled and handcuffed plaintiff in a manner that broke his arm.

Next, the Court must determine whether this right was clearly established at the time of the incident.  Plaintiff argues that "[b]y 2019, it was clearly established that using violent force against a suspect believed to have committed only minor nonviolent crimes, who poses no threat to officers or the public, and who puts up little resistance is a violation of the Fourth Amendment." Memorandum In Opposition To Defendant Bard Williams' Motion For Summary Judgment (Doc. #118) filed January 4, 2023 at 24.  Plaintiff cites several cases to support this argument, most pertinent of which is Morris v. Noe, 672 F.3d 1185 (10th Cir. 2012).

In Morris, plaintiff sued a police officer for using excessive force on her late husband, William Morris III.[6]  Officers had responded to a domestic disturbance call involving an altercation between plaintiff and several other people, including Quinton Bell.  Morris had asked Bell why he was yelling at plaintiff.  Bell then "came running at" Morris.  Morris put his hands up in self-defense and started backing toward the police officers "for help."   The police officers then "lunged" at Morris, threw him to the ground and handcuffed him.  Morris was hospitalized for injuries he suffered from being thrown to the ground.  Id. at 1189–90.

The defendant officer argued that he was entitled to qualified immunity because he had reasonable suspicion that Morris was committing an assault and that he used reasonable force to restrain Morris.  The Tenth Circuit analyzed the Graham factors and determined that the first factor— the severity of the crime at issue—weighed slightly in favor of defendants because if Morris's arrest for assault was warranted, "a forceful takedown" might very well be appropriate.  Id. at 1195.

---

[6]      Morris died three years after the events in question.

The Tenth Circuit concluded, however, that the other two Graham factors weighed heavily in plaintiff's favor.  Under the second factor, the court found that Morris posed little immediate threat to the officers or to Bell, carried no weapon and made no overt threats.  Id. at 1196.  Under the third factor, Morris did not resist arrest, attempt to flee or struggle with the officers before or after they took him to the ground.  Id.

The Tenth Circuit also determined that Morris had a clearly established right to be free from the level of force that the defendant officer used.  Even though prior cases were "of limited usefulness . . . because the facts are dissimilar to this case," under the sliding scale analysis "we may conclude a constitutional right was clearly established, even in the absence of similar prior cases, if the force is clearly unjustified based on the Graham factors."  Id. at 1197–98.  Because the second and third Graham factors weighed heavily in favor of plaintiff, the court reasoned that "[a] reasonable officer . . . would not have needed prior case law on point to recognize that it is unconstitutional to tackle a person who has already stopped . . . and who presents no indications of dangerousness.  Such conduct is a major departure from reasonable behavior under both the Graham factors and the officer's training."  Id. at 1198 (quoting Raiche v. Pietroski, 623 F.3d 30, 39 (1st Cir. 2010)).

Here, as in Morris, even without consulting prior case law, Williams was clearly unjustified in using the level of force which he employed to arrest plaintiff because the Graham factors weighed in favor of plaintiff.  In 2012, Morris clearly established a "right to be free from a forceful takedown" when, as here, plaintiff had already stopped, presented no indications of dangerousness and was not resisting arrest.  Id. at 1198.  The Court therefore overrules Williams' motion for summary judgment on this claim.

B.        **Malicious Prosecution Claim Against Williams**

Plaintiff claims that Williams' affidavit falsely claimed that plaintiff held his skateboard above his head as though he intended to strike Williams and that the State of Kansas, relying on those false statements, prosecuted plaintiff for assault and interference with a law enforcement officer.  Williams argues that he is entitled to qualified immunity because (1) he did not cause the State to bring charges against plaintiff, (2) he had probable cause to arrest plaintiff and (3) even if plaintiff has a viable malicious prosecution claim, the law was not clearly established at the time of plaintiff's arrest.

As before, the Court must grant qualified immunity unless plaintiff can show that a reasonable jury could find facts supporting a violation of a constitutional right which was clearly established at the time of the defendant's conduct.  42 U.S.C. § 1983; Booker, 745 F.3d at 411.  To establish a malicious prosecution claim under Section 1983, plaintiff must establish (1) each element of common law malicious prosecution and (2) that the malicious prosecution deprived him of his Fourth Amendment right to be free from unreasonable seizures.[7]  Becker v. Kroll, 494 F.3d 904, 914 (10th Cir. 2007); Novitsky v. City of Aurora, 491 F.3d 1244, 1257 (10th Cir. 2007).  The common law elements of malicious prosecution are as follows: (1) defendant initiated, continued or procured the proceeding of which the complaint is made; (2) the proceeding terminated in favor of plaintiff;

_____

[7]        Defendant did not seek summary judgment on this issue, but it is not readily apparent that, *because of* the malicious prosecution, plaintiff has suffered any "seizure" within the meaning of the Fourth Amendment.  The legal process in this case began when the District Attorney brought misdemeanor charges on July 12, 2019, *after* the jail released plaintiff. Defendants never seized plaintiff after the legal process began.  See Myers v. Koopman, 738 F.3d 1190, 1194–95 (10th Cir. 2013) ("Unreasonable seizures imposed *without* legal process precipitate Fourth Amendment false imprisonment claims . . . . Unreasonable seizures imposed *with* legal process precipitate Fourth Amendment malicious-prosecution claims.") (emphasis added); Wallace v. Kato, 549 U.S. 384, 389–91 (2007); Mondragon v. Thompson, 519 F.3d 1078, 1082 (10th Cir. 2008).  Because the parties did not raise this issue in briefings, the Court will not grant summary judgment on these grounds.

(3) probable cause did not support the original proceeding; (4) defendant acted with malice; and (5) plaintiff sustained damages.  Lindenman v. Umscheid, 255 Kan. 610, 624, 875 P.2d 964, 974 (1994).

Williams first argues that he did not cause plaintiff's prosecution.  He argues that the District Attorney's "independent determination" to file charges breaks the causal connection between his actions and that because the new charges were different than those which his arrest report recommended, plaintiff's prosecution was based on her independent review of the evidence and the criminal court's determination that probable cause existed.  Memorandum In Support Of Defendant Brad Williams' Motion For Summary Judgment (Doc. #106) filed November 7, 2022 at 14. According to the undisputed facts, however, the District Attorney relied in part upon "reports" concerning the encounter, which presumably included Williams' probable cause affidavit and police report following the arrest, both of which included Williams' allegations that plaintiff (1) raised his skateboard as though he was going to hit Williams and (2) resisted arrest.

The facts, construed in the light most favorable to plaintiff, show that he did not threaten Williams with his skateboard or resist arrest; plaintiff has therefore raised a genuine issue of material fact whether Williams caused the District Attorney to file charges for interference with law enforcement, assault of a law enforcement officer and failure to obey a lawful order of a police officer.  See Taylor v. Meacham, 82 F.3d 1556, 1564 (10th Cir. 1996) (causal link between wrongful arrest and malicious prosecution broken by indictment *unless* officer knowingly makes false statements to prosecutor); Robinson v. Maruffi, 895 F.2d 649, 656 (10th Cir. 1990) (in malicious prosecution claim, prosecutor's decision to charge will not "shield a police officer who deliberately supplied misleading information that influenced the decision" and officer "cannot hide behind the officials whom they have defrauded").

Next, Williams argues that plaintiff cannot establish that he acted without probable cause because the Douglas County District Court found that Williams had probable cause to arrest plaintiff. When ruling that Williams had probable cause, the district court also relied on Williams' probable cause affidavit.  At the time, plaintiff did not dispute the probable cause affidavit, and the court therefore took those statements at face value.  Plaintiff now disputes crucial facts in the probable cause affidavit.  Construing the record in the light most favorable to plaintiff, he did not raise his skateboard as though he was going to hit Williams and did not resist arrest.  The record raises a genuine issue of material fact whether Williams had probable cause to arrest plaintiff for assault or obstruction with a law enforcement officer.  See Taylor, 82 F.3d at 1562 (probable cause for arrest warrant established by demonstrating substantial probability that crime has been committed and that specific individual committed crime).  Plaintiff has therefore satisfied the elements of common law malicious prosecution.[8]

For purposes of qualified immunity, plaintiff must also show that his right to be free from malicious prosecution was clearly established at the time of the events in question.  As noted, for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.  Fogarty, 523 F.3d at 1161.  The rule's contours must be so well defined that it is clear and apparent to a reasonable officer that his conduct was unlawful in the situation he confronted. Wesby, 138 S. Ct. at 590.

In 2019, when the relevant events occurred, Williams' role in the malicious prosecution— providing materially false statements to the District Attorney—was a violation of clearly established

---

[8]     Defendant does not contest that plaintiff has satisfied the other elements of malicious prosecution.

law.  See Wilkins, 528 F.3d at 805 (citing Franks v. Delaware, 438 U.S. 154, 155–56 (1978)) (officer violates Fourth Amendment when knowingly including false statements in probable cause affidavit). Williams is not entitled to qualified immunity, and the Court overrules his motion for summary judgment on this claim.[9]

## II.        Common Law Claims

Plaintiff claims that Williams committed common law battery and malicious prosecution and that the City of Lawrence is vicariously liable for those torts.[10]   Williams argues that (1) under K.S.A.  75-6104(e) and (n), he cannot be held liable for common law battery and malicious prosecution; (2) under K.S.A. § 21-5227(a), he cannot be held liable for battery; and (3) plaintiff cannot satisfy the elements of either claim.   The City of Lawrence argues that it cannot be held vicariously liable because Williams cannot be liable on the underlying claims.

---

[9]        Williams argues that plaintiff's right to be free from malicious prosecution in this case was not clearly established because, under Tenth Circuit law at the time of the relevant events, plaintiff's prosecution did not end in favorable termination.  Before 2022, voluntary dismissal of charges against plaintiff did not necessarily qualify as a favorable termination, and plaintiff had to show that the termination "in some way indicate[d] the innocence of the accused."  Cordova v. City of Albuquerque, 816 F.3d 645, 650–52 (10th Cir. 2016).  But see Thompson v. Clark, 142 S.Ct. 1332, 1341 (2022) (overturning Cordova and holding that plaintiff need only show prosecution ended without conviction).  This argument is unavailing because "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation."  Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir. 2007) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).  In 2019, it would have been clear to a reasonable officer that providing materially false statements to a District Attorney was unlawful.  Wilkins, 528 F.3d at 805 (citing Franks, 438 U.S. at 155–56).

[10]        Plaintiff also brought a negligence claim against Burns and the City of Lawrence that he has now dropped.  Memorandum In Opposition To Defendant Brad Williams' Motion For Summary Judgment (Doc. #118) at 20.  The Court therefore grants Williams' motion for summary judgment on plaintiff's negligence claim against Burns and the City of Lawrence.

A.    **K.S.A. 75-6104(e) and (n)**

Williams argues that under K.S.A. § 75-6104(e) and (n), he cannot be held liable on plaintiff's common law claims.  Section 75-6104(e) provides "discretionary function" immunity. while Section 75-6104(n) provides "police protection immunity."   The discretionary function exception provides immunity from liability for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved."  K.S.A. § 75-6104(e).  The police protection exception provides immunity for the "failure to provide, or the method of providing, police . . . protection."  See Allen v. Bd. of Comm'rs of Cty. of Wyandotte, 773 F. Supp. 1442, 1455 (D. Kan. 1991).

Neither exception protects a law enforcement officer who commits an intentional tort, however, or who uses an unreasonable amount of force.  Id. at 1453 (no KTCA protection for officers who act maliciously, or who wantonly fail to exercise care and diligence required); Beck v. Kan. Adult Auth., 241 Kan. 13, 31–35, 735 P.2d 222, 236–38 (1987) (KTCA immunities do not shield acts involving intentional act and intentional injury); Hopkins v. State, 237 Kan. 601, 609–11, 702 P.2d 311, 318–19 (1985) (immunities in K.S.A. § 75-6104 apply to negligent acts or omissions but not to acts involving "more than the lack of ordinary care"); Caplinger v. Carter, 9 Kan. App.2d 287, 293–94, 676 P.2d 1300, 1306–07 (1984) (KTCA immunities do not shield law enforcement officer's intentional use of otherwise unprivileged force); Nicol v. Auburn-Washburn USD 437, 231 F. Supp. 2d 1092, 1106 (D. Kan. 2002) (KTCA immunities do not apply to intentional torts).

Here, plaintiff's state law claims against Williams for battery and malicious prosecution are intentional torts.  Therefore, the KTCA immunities do not shield him from liability for plaintiff's claims.  The Court overrules summary judgment on these grounds.

B.      **Battery Claim Against Williams**

Plaintiff claims that during the arrest, Williams committed battery.  Williams argues that he did not batter plaintiff because he did not intend to cause injury and that his use of force was privileged under K.S.A. § 21-5227(a).

Civil battery is the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact that is harmful or offensive. McElhaney v. Thomas, 307 Kan. 45, 53, 405 P.3d 1214, 1219 (2017).

Williams' first argument—that he did not intend to cause injury—is a question for the jury. Plaintiff has raised a genuine issue of material fact whether Williams used excessive force when arresting him.  For the same reasons, plaintiff has raised a genuine issue of material fact whether Williams' level of force amounted to an intent to harmfully contact plaintiff.  The Court overrules defendant's motion for summary judgment on these grounds.

Next, Williams argues that his use of force was privileged under K.S.A. § 21-5227(a). Section 21-5227(a) provides that a law enforcement officer "is justified in the use of any force which such officer reasonably believes to be necessary to effect the arrest and the use of any force which such officer reasonably believes to be necessary to defend the officer's self or another from bodily harm while making the arrest."

Williams claims that he reasonably believed that his use of force against plaintiff was necessary to effect the arrest and necessary to defend himself from bodily harm while making the arrest, and therefore the privilege created by Section 21-5227(a) applies to him.  The Court already has concluded, however, that plaintiff has raised a genuine issue of material fact whether Williams unreasonably used excessive force.  Thus, the privilege created by Section 21-5227(a) does not

protect Williams as a matter of law.  The Court overrules defendants' motion for summary judgment on this claim.

### C.        Battery Claim Against the City of Lawrence

Plaintiff's battery claim against the City of Lawrence is based on vicarious liability for Williams' actions.  The City's motion for summary judgment on the battery claim argues that since Williams did not intend to injure plaintiff and his physical contact with plaintiff was privileged under the Kansas Tort Claims Act, the City cannot be vicariously liable because Williams did not commit battery.  The Court has already rejected these arguments and denied summary judgment on the battery claim against Williams.  Defendant offers no further argument why the Court should grant summary judgment on this claim against the City of Lawrence.  The Court therefore overrules defendants' motion for summary judgment on this claim.

### D.        Malicious Prosecution Claim Against Williams

Plaintiff brings a common law malicious prosecution claim against Williams.  As explained in Section (I)(B) above, plaintiff has satisfied the elements of a common law malicious prosecution claim.  Williams advances no arguments for summary judgment that the Court has not already addressed and rejected.  The Court therefore overrules Williams' motion for summary judgment on this claim.

### E.        Malicious Prosecution Claim Against the City of Lawrence

Plaintiff's malicious prosecution claim against the City of Lawrence is based on vicarious liability for Williams' actions.  The City's motion for summary judgment is largely duplicative of its argument for summary judgment on the malicious prosecution claim against Williams. Defendants argue that, in filing the misdemeanor charges, the District Attorney did not rely solely on Williams' probable cause affidavit and therefore the "chain of causation was broken by the

independent actions of the District Attorney."  Defendants City of Lawrence and Gregory C. Burns' Memorandum In Support Of Their Motion For Summary Judgment (Doc #104) filed January 7, 2023 at 19.  As explained in Section (I)(B), however, a police officer does not break the chain of causation when knowingly making false statements to the prosecutor.  Taylor, 82 F.3d at 1564.  The City of Lawrence offers no further argument why the Court should grant summary judgment on this claim. The Court therefore overrules its motion.

### III.    Failure to Supervise Claim Against Burns and the City of Lawrence

Under Section 1983, plaintiff claims that Burns and the City of Lawrence are liable for failure to supervise Williams, thus allowing him to initiate malicious prosecution against plaintiff in violation of the Fourth Amendment.  Plaintiff's claim against Burns is based on the fact that, in February of 2019, Burns learned that Williams had allegedly made untruthful statements in the O'Connor matter but did not discipline or fire him.  Plaintiff's claim against the City of Lawrence is based on the fact that after Burns resigned in May of 2020, Brixius officially exonerated Williams from allegations that he made false statements in the O'Connor matter and did not discipline or fire him.

Defendants argue that plaintiff (1) has not identified a policy or custom that caused his injuries; (2) has not shown deliberate indifference to his Fourth Amendment right to be free from malicious prosecution; and (3) has not shown a causal link between an alleged constitutional deprivation and the City's supervision of Williams.

Plaintiff may hold a municipal entity liable when an official policymaker inflicts plaintiff's injury by executing a government policy or custom.  Monell v. N.Y. City Dep't of Social Servs., 436 U.S. 658 (1978).  Under Monell, plaintiff must prove three elements to state a claim against a municipal entity: "(1) an underlying injury to a constitutional right of the plaintiff, (2) a municipal

policy or custom, and (3) a direct causal link between the policy or custom and the injury." <u>Schneider</u> <u>v. City of Grand Junction Police Dep't</u>, 717 F.3d 760, 770 (10th Cir. 2013).  A municipal policy or custom can take the form of a "failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." <u>Waller v. City & Cty.</u> <u>of Denver</u>, 932 F.3d 1277, 1283 (10th Cir. 2019) (quotation marks and citations omitted).

On February 12, 2019, Kerns informed Burns that Williams had allegedly lied in the O'Connor matter.  On March 18, 2019, Burns initiated an Office of Professional Accountability investigation.  Ernst investigated the matter until at least July 17, 2019.  Between June 29 and July 12, 2019, before Ernst concluded his investigation: (1) Williams arrested plaintiff, (2) Williams submitted his probable cause affidavit for plaintiff's arrest, (3) Williams submitted his police report for plaintiff's arrest, and (4) the District Attorney brought charges against plaintiff.

Plaintiff therefore can only base his failure to supervise claim on events that occurred before July 12, 2019—the time frame when Burns or the City of Lawrence could have supervised Williams in a way that would have prevented Williams from initiating a malicious prosecution against plaintiff.  During this time, Ernst was investigating the allegation that Williams had lied in the O'Connor matter but had not yet completed his investigation.

Plaintiff must show a "direct causal link between the policy or custom and the injury alleged." <u>Waller</u>, 932 F.3d at 1284.  The causation element "is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." <u>Schneider</u>, 717 F.3d at 770.

Here, plaintiff has not demonstrated a genuine issue of material fact with regard to these rigorous causation requirements.  Plaintiff does not allege that, before July 12, 2019, Burns or the

City of Lawrence failed to train or supervise Williams in a way that, if remedied, could have prevented Williams from initiating a malicious prosecution against plaintiff.

Plaintiff argues that "[i]n Burns' view, Defendant Williams did nothing wrong (in either situation—O'Connor's or Tran's)" and that defendants' "failure to investigate or reprimand might cause a future violation by sending a message to officers that such behavior is tolerated." Memorandum In Opposition To Defendants City Of Lawrence And Gregory C. Burns' Motion For Summary Judgment (Doc. #121) filed January 13, 2023 at 28. By July 12, 2019, however, (1) Burns had initiated an investigation and (2) because Ernst had not concluded his investigation, Burns had not yet concluded whether Williams had done anything wrong. Plaintiff provides no evidence that, on or before July 12, 2019, Burns believed that Williams did nothing wrong. Plaintiff also has no factual grounds to argue that Burns or the City of Lawrence "ratified" Williams' alleged false statements in the O'Connor case at a time when the police department was actively investigating Williams for making the false statements in question.

Plaintiff complains that Ernst did not interview O'Connor while conducting his investigation in the O'Connor matter. Plaintiff has not provided evidence, however, that Ernst's failure to interview O'Connor violated any department policy, constituted negligence or intentional misconduct or that interviewing O'Connor would have changed the outcome of his investigation. This singular fact is not sufficient for plaintiff to raise a genuine issue of material fact with regard to the "rigorous" causation requirements in a failure to supervise claim. Schneider, 717 F.3d at 770.

Further, plaintiff argues that, because it ratified Williams' conduct when Brixius exonerated Williams after investigating the O'Connor matter, the City of Lawrence failed to supervise Williams. Brixius exonerated Williams in or after March of 2020, however, more than six months after Williams initiated prosecution against plaintiff. Plaintiff advances no arguments that the City of

Lawrence failed to supervise Williams *before* Williams arrested plaintiff.  The Court therefore grants summary judgment on plaintiff's Section 1983 claims against Burns and the City of Lawrence for failure to train and supervise.[11]

**IT IS THEREFORE ORDERED** that Defendant Brad Williams' Motion For Summary Judgment (Doc. #105) is **OVERRULED** and Defendants City of Lawrence And Gregory C. Burns' Motion For Summary Judgment (Doc. #103) is **SUSTAINED IN PART** and **OVERRULED IN PART.**  The City of Lawrence and Burns are entitled to summary judgment on plaintiff's negligence claims and plaintiff's Section 1983 failure to train and supervise claims.  The City of Lawrence's and Burns' motions for summary judgment on all other claims are **OVERRULED**.

The following claims therefore remain for trial:

1.  Plaintiff's Fourth Amendment excessive force claim against Williams;

2.  Plaintiff's Fourth Amendment malicious prosecution claim against Williams;

3.  Plaintiff's battery claim against Williams;

4.  Plaintiff's common law malicious prosecution claim against Williams;

5.  Plaintiff's battery claim against the City of Lawrence; and

6.  Plaintiff's common law malicious prosecution claim against the City of Lawrence.

Dated this 1st day of February, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[11]     In his official capacity, Burns also argues that the failure to train and supervise claim against him is redundant because plaintiff is bringing essentially a duplicative claim against the City of Lawrence.  Because the Court grants summary judgment on the merits of plaintiff's Section 1983 failure to train claim against both Burns and the City of Lawrence, this argument is moot.